[No. 21647.   Department One.   May 9, 1929.]

M. B. STEVENSON *et al., Respondents,* v. GEORGE M. HAZARD *et al., Appellants.*[1]

*Crass & Hardin* and *Hall & La Londe,* for appellants.

*Miller, Wilkinson & Miller* and *Bates & Burnett,* for respondents.

HOLCOMB, J.—This is an appeal from an order of the lower court setting aside a stipulation upon motion in the cause in which the stipulation was entered by respondents.

[1]Reported in 277 Pac. 450.

Although appellants, by their first assignment of error, to which no argument is devoted and no authorities cited, apparently question the jurisdiction of the court to pass upon a mere motion to vacate such stipulation and not by an independent action instituted for that purpose, that such is the proper procedure, we regard as settled by our decision in *Levy v. Sheehan,* 3 Wash. 420, 28 Pac. 748.

The action was begun by respondents in the superior court to enjoin appellants from blasting certain rock near Cape Horn in Skamania county, which blasting was necessary to remove certain rock in making the construction on the Evergreen highway, a state highway along the north bank of the Columbia river. At the point where the proposed blasting was to be done, it was necessary to construct the road on the face of a very high rock cliff above the level of the river. Respondents' property extends from the base of the cliff to the river. It was apparent to all concerned that, in view of the blast being discharged, the property of respondents would probably be damaged by having rock cast down upon it. It was necessary that the highway be constructed, and that the rock be removed from the course of the highway.

While a hearing was being had in the injunction proceeding, and after the testimony of respondents and appellants and their witnesses had been heard, it was agreed by written stipulation, signed by the attorneys for all the parties, and by the parties themselves, that the court should appoint three appraisers to view the property, determine its condition at that time, decide whether it was necessary for respondents to remove from their home, fix the amount necessary to properly compensate respondents, should it be found necessary for them to remove from the premises; and that, after the blasting was done, the appraisers were to view the

premises and determine the amount of damages sustained to the land. The stipulation also provided that appellants should furnish a bond, payable to respondents, in the sum of $1,500, conditioned that they would pay all damage, and, in case they did not so pay the amount found by the appraisers, the amount of the bond should be returned into court and would constitute a judgment against them.

Thereupon all proceedings in the action were stayed. In accordance with the stipulation, the court appointed the appraisers, the bond was given and approved, the appraisers made a careful survey and inspection of the premises, and made report showing their condition at that time with a view to a further report as to the damages to the property after the blast was discharged; it was determined that it was unsafe for respondents to remain upon the property during the blasting, and fixed the amount that appellants should pay them as the cost of removal in the sum of $411, which appellants paid by check.

This check was tendered by appellants to respondents at about 4:00 P. M. on the day previous to that on which the blast was to be set off at 2:00 P. M. The check was never cashed, but after the blasting had been done and the buildings of respondents, with their contents, with the exception of some clothing and the stock on the premises, was completely destroyed, the check was tendered back by respondents to appellants, refused by them and then deposited by respondents in the registry of the court.

After the blasting was done, respondents appeared in the same action and moved the court to set aside the stipulation. Hearing thereon was had upon affidavits, and after considering the facts as shown by the affidavits, which, on the part of respondents, were

largely uncontradicted, the court granted the order complained of.

The nature of the several contentions of the parties, as well as the facts established by the affidavits, are so clearly set forth by the memorandum decision of the trial judge that it will be here quoted:

"Several reasons have been advanced by counsel for plaintiffs why this stipulation should be set aside. At least two of these reasons seem to be supported by the law and justified by the facts. First, because the results of the blast were not within the contemplation of the parties when the stipulation was signed, and second, because it would be impossible for the appraisers appointed pursuant to the stipulation to determine the extent of the damage done to the property of the plaintiffs.

"I feel that the evidence discloses that no one had in mind when this stipulation was signed that the blast would spread rock from 5 to 25 feet deep over five or six acres of the land of plaintiffs, entirely destroying his house, spring, barn, orchard and furniture, etc. The fact that the bond fixed by the stipulation was only $1500 indicates that plaintiffs did not have in mind that the results would be as they were. Statements by defendants, in which they minimized the danger, and the fact that they set off the blast on the day following the day they paid or delivered the check to plaintiffs in payment of the costs of moving as fixed by the appraisers, shows that they did not have in mind that the blast would do the damage it did. To contend or hold that defendants shot the blast with the idea or thought that it would cause the havoc that it did, would be imputing to them a wantonness or callousness that is unfair.

"The second reason seems to be unquestionably established by the facts. The facts in this connection, which I do not understand counsel for defendants dispute, show that the appraisers did not look the house over with any idea of placing a value on it, were not in the house or in the barn, did not see and knew noth-

ing of the contents of either, and could not, of their own knowledge, fix the damage to the house or the furniture and personal property destroyed. They have no authority, under the stipulation, to subpoena witnesses or to hear and take evidence, and are unable to cope with the situation as it has developed. The fact that they did not inform themselves is evidence that they, as well as the parties, did not have in mind that the results would be so disastrous, otherwise they would have examined everything on the place with a view to ascertaining its value in case of total destruction.

"Counsel for defendant contend, however, that plaintiff was paid the amount fixed by the appraisers for moving, and argue, inferentially at least, that the loss of his personal property was due to his own fault. The facts show that the check was delivered on the afternoon of the day previous to the day on which the blast was set off, and that plaintiff went to Vancouver to get a little extension of time in which to move. He apparently, from the facts before the court, was willing to move, and there is nothing to indicate that he was purposely trying to delay. He was not required to move until he was paid. The evidence does not show how far he had to move or was going to move, and it would seem that his belief that he should have more time than that elapsing between 4 o'clock P. M. on the 21st and 2 o'clock P. M. on the 22nd, to move all his personal property from his farm, was a very moderate request. If any point is to be made of this, it seems that defendants might be more justly charged with undue haste than plaintiffs with unreasonable delay.

"It is further contended that plaintiffs, in any event, are premature in their move to set aside the stipulation, because, as yet, the appraisers have not fixed the amount which is due plaintiffs, and when that is done plaintiffs may have no cause to complain. It seems to me that this is beside the question. If the parties did not have in mind giving the appraisers authority to act under conditions as they now exist, the appraisers are without authority so to do, and

neither party should be required to submit to an award made by them. Furthermore, as shown by the facts here, the appraisers are unable, because of lack of information, to perform their function, and plaintiffs, or the defendants, for that matter, should not be required to submit the determination of their rights to such a tribunal.

"That the court has the authority, in the exercise of its sound discretion, to set aside a stipulation improvidently or mistakenly entered into, finds support in the authorities, and in fact seems to be the law generally. R. C. L., vol. 25, pages 1099-1100.

"There is some discrepancy in the affidavits as to the date when the blast was set off. It is not particularly material, however, for, whether it was the 20th or the 22nd, the affidavits seem to show that the payment for the removal was made the day previous.

"After carefully considering this matter, I am, for the reason above assigned, of the opinion that the stipulation should be set aside."

The second claim of error, that the court erred in entering the order setting aside the contract, goes to the merits.

Appellants first assume that the trial judge proceeded upon the presumption that he was dealing with the question of arbitration, whereas the only question at issue was one of appraisal of damages, and cites 2 R. C. L. p. 351, and *Martin v. Vansant,* 99 Wash. 106, 168 Pac. 990, Ann. Cas. 1918D 1147, defining the difference between arbitration and appraisal.

We have also further considered the distinction between arbitration and appraisal in a case not cited by either party, *State ex rel. Fancher v. Everett,* 144 Wash. 592, 258 Pac. 486.

There is no question in this case but that the stipulation in question dealt with appraisal and not arbitration, but that is immaterial. The *Martin* case, *supra,*

relied upon by appellants, recognizes the rule that even appraisal contracts may be revoked for cause.

The rule is well settled that courts may, in the exercise of a sound judicial discretion and in the furtherance of justice, relieve parties from stipulations which they have entered into in the course of judicial proceedings, and on appeal such determination by trial courts will not ordinarily be interfered with, except, for a manifest abuse of discretion. Relief has frequently been granted in the case of stipulations entered into by parties improvidently, mistakenly *(Levy v. Sheehan, supra)*, or as the result of fraudulent inducements, especially if enforcement would work injustice. 25 R. C. L. 1099 and 1100; 36 Cyc. 1294 *et seq.; Pallisser v. Home Telephone Co.,* 170 Ala. 341, 54 South 499; *Truett v. Onderdonk,* 5 Cal. Unrep. 785, 50 Pac. 394; *Gerdtzen v. Cockrell,* 52 Minn. 501, 55 N. W. 58; *St. Louis-San Francisco R. Co. v. Cauthen,* 112 Okl. 256, 241 Pac. 188, 48 A. L. R. 1447. (See case notes A. L. R., commencing p. 1467.)

From an examination of the record, we are satisfied, as was the trial court, that there was no appreciation by either respondents or appellants, when the stipulation was entered into, that there would be such great damages caused by the explosion; and further, that it is impossible for the appraisers appointed by the court to view all the property destroyed and the damages sustained, so as to properly arrive at the amount of the damage; and they have no power to summon witnesses upon that question. The stipulation was entered into, as the parties then viewed the situation, under a mutual mistake of fact. The mistake was so gross as to constitute constructive fraud against respondents, regardless of actual intent to defraud them on the part of appellants, of which there was none.

We conclude that the trial court was justified in granting the order setting aside the stipulation, and it is affirmed.

MITCHELL, C. J., TOLMAN, FULLERTON, and BEALS, JJ., concur.